IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **MEDIA KEY LLC,** § | | |
| § | | |
| Plaintiff, § | | Case No. 1:24-cv-00201 |
| v. § | | |
| § | | **Jury Trial Demanded** |
| **MICROSOFT CORP.,** § | | |
| § | | |
| Defendant. § | | |

### DEFENDANT MICROSOFT'S MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Microsoft Corporation ("Microsoft") moves to dismiss Plaintiff Media Key LLC's Complaint (Dkt. 1) ("Compl.") with prejudice for failure to state a claim upon which relief can be granted. The Complaint provides nothing more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and therefore "do[es] not suffice" to maintain a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In fact, the Complaint fails to allege certain elements altogether and even makes affirmative statements that those elements are not satisfied. Additionally, the only asserted claim of the sole asserted patent, U.S. Patent No. 7,606,876 (the "'876 patent) is invalid under 35 U.S.C. § 101 for lacking patent eligible subject matter. For each of these reasons, the Court should dismiss the Complaint.

### I.       LEGAL STANDARD

####         A.       Motion to Dismiss for Failure to State a Claim

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While factual

allegations are taken as true on a motion to dismiss, this assumption "is inapplicable to legal conclusions." *Id.*; *accord Martone v. Robb*, 902 F.3d 519, 523 (5th Cir. 2018). Further, while the "plausibility requirement is not akin to a probability requirement," a plaintiff must do more than raise the "sheer possibility" of infringement and plead "enough fact[s] to raise a reasonable expectation that discovery will reveal that the defendant is liable for the misconduct alleged." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331, 1341 (Fed. Cir. 2012) (citations omitted).

### B.  Patent Eligibility Under 35 U.S.C. § 101

When evaluating patent-eligibility under 35 U.S.C. § 101, courts apply the two-step analysis articulated in *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (internal citations omitted). At *Alice* Step One, the court must first determine whether the claims are "directed to" a patent-ineligible concept, such as an abstract idea. *Id.* at 217–218. If so, at Step Two, the court must evaluate the "additional elements" of the claims beyond the abstract idea itself to determine whether there is "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (cleaned up). *Alice* described this second step as a search for an "inventive concept" that is sufficient to transform the patent-ineligible concept into patent-eligible subject matter. *Id.* If a claim "directed to" a patent-ineligible concept lacks an "inventive concept," the claim is ineligible under 35 U.S.C. § 101 and is thus invalid. *Id.*

Patent eligibility is a question of law suitable for resolution at the pleadings stage. *See, e.g.*, *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1355–56 (Fed. Cir. 2018). Courts in this district regularly resolve questions of patent eligibility under § 101 pursuant to motions made under Rule 12(b)(6). *See, e.g.*, *Health Discovery Corp. v. Intel Corp.*, 577 F. Supp. 3d 570, 587 (W.D. Tex. 2021); *Affinity Labs of Tex., LLC v. DirecTV, LLC*, 109 F. Supp. 3d

916, 945 (W.D. Tex. 2015). Claim construction is not necessary to determine patent-eligibility. *See Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017).

## II. THE COMPLAINT SHOULD BE DISMISSED BECAUSE ITS ALLEGATIONS ARE SUPPORTED ONLY BY CONCLUSORY STATEMENTS

Media Key's Complaint fails to plausibly state a claim for patent infringement because it alleges nothing more than conclusory statements in support of its claim. In fact, the Complaint contains little more than boilerplate recitations of the legal elements of Media Key's claims and, other than information on the identity and address of Microsoft, is substantively identical across the four other cases Media Key has filed in this and other districts. And the Complaint's purported reliance on Exhibit 2 does not save it. Exhibit 2 fails to provide notice of the features of Microsoft Intune (the accused product) that are alleged to infringe the asserted patent. Indeed, Exhibit 2 is largely incomprehensible, with color-coded underlining that does not align with the text and in some cases runs off the page. *See* Compl., Ex. 2, at 2–9. For example:



| [17D]. creating updated information and transmitting the updated information to the electronic device. | Evidence: Microsoft Intune discloses, creating updated information (i.e., content update) and transmitting (i.e., transfer) the updated information to the electronic device (i.e., distribution point). <br><br> Applies to: Configuration Manager (current branch) <br><br> After you install distribution points for Configuration Manager, you can begin to deploy content to them. Typically, content transfers to distribution points across the network, but other options to get content to the distribution points exists. After content transfers to a distribution point, you can update, redistribute, remove, and validate that content on distribution points. <br><br> https://learn.microsoft.com/en-us/mem/configmgr/core/servers/deploy/configure/deploy-and-manage-content#bkmk_distributehttps://learn.microsoft.com/en-us/mem/configmgr/core/servers/deploy/configure/deploy-and-manage-content#bkmk_distribute |
|---|---|

This same chart ***explicitly admits*** it does not have any basis for believing that Microsoft Intune meets the "a past history of transactions, demographic information received from the user" limitation. *See id.* at 6 (failing to provide an color-coded underlining for this element and stating that "[a]ny equivalence for past history of transactions or demographics was not identified"). Furthermore, the Complaint's charge of direct infringement is facially invalid because it does not include an allegation that Microsoft Intune directly infringed the asserted patent "within the United States" as required by 35 U.S.C. § 271(a). *See* Compl. ¶¶ 11–12; *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1375 (Fed. Cir. 2005) ("It is well-established that the reach of section 271(a) is limited to infringing activities that occur within the United States.").

More directly, the Complaint fails to state a claim because it fails to "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *See Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The Federal Circuit has cautioned that "a plaintiff cannot assert a plausible claim for infringement under the *Iqbal*/*Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements. There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).

- 4 -

Media Key's Complaint fails this requirement. And while the two exhibits look like claim charts where factual allegations of infringement may be found, most of them fail to connect the claim language to any aspects of the accused product. And in the case of one limitation, the claim chart admits that Media Key has no basis to believe that Microsoft Intune satisfies a claim limitation. *See generally*, Compl., Ex. 2; *id.* at 6 (admitting no connection to a claim limitation).[1] Thus, as in *Bot M8*, Media Key's infringement claims should be dismissed because it has "failed to offer factual allegations that support a plausible inference" that the accused product actually practices the asserted claim. *Id.*; *see also LS Cloud Storage Techs., LLC v. Amazon.com, Inc.*, No. 1:22-cv-1167-RP, 2023 WL 2290291, at *4 (W.D. Tex. Feb. 27, 2023) (dismissing complaint because "Plaintiff ha[d] not shown how each limitation is met," so the "allegations amount to 'blanket assertions of infringement insufficient to put' Defendants on notice.") (citing *Grecia Est. Holdings LLC v. Meta Platforms, Inc.*, 605 F. Supp. 3d 905, 916 (W.D. Tex. 2022)).

## III. THE CLAIMS OF THE '876 PATENT ARE INVALID UNDER 35 U.S.C. § 101

Media Key's Complaint should also be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because the sole asserted claim of the '876 patent is ineligible under 35 U.S.C. § 101.

### A. The '876 Patent

The '876 patent is entitled "Media Keying for Updatable Content Distribution." Compl., Ex. 1. The '876 patent explains that "multimedia content and other data has traditionally been [distributed] using media, such as the floppy disk, magnetic tape, or compact disc (CD)." *Id.* at 1:16–19. "Typically, the media are pre-recorded with content" from the content provider and the

---

[1] This statement in particular raises Rule 11(b) concerns, as it suggests Media Key knew that it did not have a reasonable basis to bring this action when it filed the complaint. It also demonstrates that any amendment to the complaint would be futile and thus this case should be dismissed with prejudice.

content is "meant to be static for the end user, that is, after the information is pre-recorded onto the media, the information is not changed or updated by the content provider." *Id.* 1:19–25. The '876 patent describes a method and system for "keying" media to allow for updates to information stored on that media. The media described in the specification are conventional re-writeable (and thus, updateable) media that existed well before the '876 patent, such as "floppy disk, magnetic tape, EEPOMS, CD, DVD, memory card, etc." *Id.* at 2:64–66. The patent suggests that, when sold, the media will include a "Keying Application and unique Source ID" *Id.* at 2:14–15. This Keying Application can connect and interact with a "Content Server," send the Source ID to that server, and download a content update from the server. *See id.* at 4:37–54, 5:25–30. The Keying Application may also send a unique User ID to the server if the media has previously been used to connect to the system. *Id.* at 5:6–14. The Keying Application is software implemented using known and existing computer functionality—for instance, the specification notes that "in the case of running the media on a personal computer system, the user interface may be a network browser or browser-like application[.] . . . As additional examples, the Keying Application might be a text-based, prompt-and-respond user interface, or a GUI with user initiated hyperlinks." *Id.* at 3:39–46.

The specification states that once the Source and/or User IDs have been sent to the Content Server, the Keying Application "interacts with the Content Server to deliver custom content to the user." *Id.* at 5:28–30. The Content Server may then record information about this transaction and associate it with the User ID received. *Id.* at 5:30–37. The Content Server is not unique to the '876 patent, but instead can be any "computer system or other information processing device . . . designed to access a Content Database." *Id.* at 6:32–36. The specification does not contain any description of how updates are to be delivered from the Content Server to the media, only that they

are "delivered." *See, e.g., id.* at 4:31–34.  The specification also notes that the Content to be delivered may be "customizable based at least in part upon the Source ID," and that such Content may include "directories and catalogs of goods and services," but does not describe *how* the Content is customized or provide further detail regarding appropriate content. *See id.* at 4:31–36.

Asserted claim 9 recites:[2]

> 9. A method for distributing and remotely updating information contained on storage media, wherein the information includes a media identifier and a user accesses the information by connecting the media to an electronic device, which may be adapted to connect to or selectively connected to a network, the method comprising the steps of:
>
> [a] creating original information on a content server and storing the original information on the media, wherein the original information is customized according to time and location of distribution;
>
> [b] identifying a user of the media by associating the media identifier with a user ID, wherein the user ID is linked to personal identifying information of the user and the media identifier is associated with the user ID using a keying application;
>
> [c] transmitting the user ID and media identifier to the content server to access a profile of the user, wherein the profile is based on factors including: a past history of transactions, demographic information received from the user, and the location of original distribution of the media; and
>
> [d] creating updated information and transmitting the updated information to the electronic device.

Compl., Ex. 1, at 8:37–57.  Notably, neither the specification nor the asserted claim require that anything is done with this "updated information" once it is transmitted to the electronic device.

---

[2] Exhibit 2 to the Complaint contains an infringement chart supposedly identifying the features of Microsoft Intune that infringe the '876 patent.  The chart purports to discuss Claim 17, but the text in the chart is actually that of claim 9.  It is Microsoft's understanding, therefore, that Media Key accuses Microsoft of infringing claim 9, not Claim 17.  To the extent Media Key intended to assert Claim 17 instead, Microsoft reserves its rights to address such allegations when they are properly brought before the Court.  Further, the Complaint and Exhibit 2 are inadequate under Rule 12(b)(6) for other reasons that are facially obvious and discussed in Section II above.

For example, neither the specification nor the asserted claim require that the information be used to update rewriteable data on the media.

### B. *Alice* Step One: The Asserted Claim is Directed to an Abstract Idea

The asserted claim is directed to the abstract idea of ***providing updated media content based on user characteristics***.  "To determine what a claim is directed to at step one, we look to the focus of the claimed advance." *Am. Axle v. Neapco*, 967 F.3d 1285, 1292 (Fed. Cir. 2020) (quotations and citations omitted).  The focus of claim 9 is the ability to provide updateable content to the end user. *See* Compl., Ex. 1, at 2:11–12  ("A method and system for keying media allows for the distribution of updatable content to the end user.").  The claim recites providing this updatable content through four basic steps: (1) using media that contains updateable content, a media identifier and a unique user identifier; (2) connecting that media using an electronic device to a content server over the internet; (3) using the media identifier and user identifier to select information to transmit; and (4) transmitting information to the media.

The Federal Circuit has identified a number of factors that tend to indicate whether a claim is abstract, including: (1) that the claim is directed to patent ineligible concepts like generic data retrieval and transmission, *see Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016); (2)that the claim recites automation of human activity, *see Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1013 (Fed. Cir. 2018);  or (3) that the claim is functional in nature, rather than reciting how the claimed function is achieved, *see First-Class Monitoring, LLC v. United Parcel Serv. of Am., Inc.*, 389 F. Supp. 3d 456, 464 (Fed. Cir. 2019).  Here, an analysis under each of these factors demonstrates that claim 9 is directed to an abstract idea.

### 1. *Claim 9 Recites Generic Data Retrieval and Transmission, an Abstract Idea.*

This claim recites a patent-ineligible abstract idea because it amounts to nothing more than generic data retrieval and transmission. The Federal Circuit has repeatedly held that concepts like these are abstract. *See PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1317 (Fed. Cir. 2021) (finding claims directed to the "abstract idea of using a content-based identifier to perform an abstract data-management function—whether controlling access to data, retrieving data, or marking data for deletion"); *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1330 (Fed. Cir. 2017) ("*Erie Indem.*") (claims directed to the abstract idea of "remotely accessing and retrieving user-specified information"); *Secured Mail Sols. LLC v Universal Wilde, Inc.*, 873 F.3d 905, 910–11 (Fed. Cir. 2017) (claims directed to the abstract idea of using "a unique identifier . . . to communicate information about the mail object, i.e., the sender, recipient, and contents of the mail object"); *Elec. Power Grp.*, 830 F.3d at 1353–54 (finding claims directed to the abstract idea of "gathering and analyzing information of a specified content, then displaying the results," and collecting cases); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 610 (Fed. Cir. 2016) (finding claims directed to the abstract idea of collecting and managing data where they recited "recording," "storing," "transmitting," and "receiving" data); *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) ("[T]he claims of the asserted patents are drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory.").

Claim 9 of the '876 patent is similar to the claims found ineligible in *Elec. Power Grp.*, 830 F.3d at 1353–54. There, the Federal Circuit collected cases holding that collecting information, analyzing it, and displaying the results were each abstract ideas that are ineligible for patent protection. *Id.* The Federal Circuit held that the claims at issue in that case were directed to a combination of these abstract ideas, without "any particular assertedly inventive technology

for performing those functions." *Id.* at 1354. In particular, the Court explained that "the focus of the claims is not on . . . an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *Id.* The asserted claim of the '876 patent likewise combines several abstract ideas—data storage, retrieval, and transmission—and calls for the implementation of these abstract ideas using generic computer hardware. *See PersonalWeb*, 8 F.4th at 1317 (finding generic data-management functions, including "controlling access to data items," "retrieving data items," and "marking data for deletion," abstract); *Erie Indem.*, 850 F.3d at 1329 ("Thus, while the claims necessarily cabin the idea of categorical data search and retrieval to a computer environment, the claimed computer functionality can only be described as generic or conventional."). As in *Elec. Power Grp.*, the focus of the asserted claim of '876 patent is not an improvement to computers, or even to computer readable media, but on abstract ideas that use computers as a tool for their implementation.

Claim 9 is also similar to the claim found ineligible in *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1362–63 (Fed. Cir. 2020). There, the Federal Circuit found that the asserted claim was directed to "deliver[ing] targeted advertising to a user." The patentee in *Customedia* argued that "by providing a reserved and dedicated section of storage, the claimed invention improves the data delivery system's ability to store advertising data, transfer data at improved speeds and efficiencies, and prevent system inoperability due to insufficient storage." *Id.* at 1363. The Federal Circuit was not persuaded, instead finding that the claimed invention merely improves the abstract concept of delivering targeted advertising using a computer only as a tool." *Id.* So too here; even assuming, for purposes of argument, that claim 9 of the '876 Patent "improves" the abstract concept for delivering updated media content, it does so using generic computer components only as tools.

Nor does the fact that the content in claim 9 of the '876 can be <u>customized</u> save this claim from abstraction, just as the targeted nature of the advertising did not save the claim in *Customedia*. *See also Chewy, Inc. v. Int'l Bus. Mach. Corp.*, 94 F.4th 1354, 1365 (Fed. Cir. 2024) ("The district court held at Alice Step One the asserted claims are directed to the abstract idea of identifying advertisements based on search results. IBM argues the claims are instead directed to a patent-eligible improvement in online advertising: obtaining search results from a user's search query and using those search results to identify targeted advertisements. We agree with the district court.") (internal citation omitted). Because this claim is directed to generic data retrieval and transmission, it is abstract and fails the *Alice* Test at Step One.

> **2.   *Claim 9 Recites The Mere Automation of Manual Processes, an Abstract Idea.***

The asserted claim of the '876 patent is also similar to the claims that were found ineligible in *PersonalWeb*, 8 F.4th at 1317. There, the Federal Circuit determined that the asserted claims "amount[ed] merely to the abstract idea of using a content-based identifier to perform an abstract data-management function—whether controlling access to data, retrieving data, or marking data for deletion." *Id.* The Federal Circuit found that each of these functions were "mental processes that 'can be performed in the human mind' or 'using a pencil and paper,' . . . a telltale sign of abstraction." *Id.* at 1316–17 (citing *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371–72 (Fed. Cir. 2011)). In particular, the Federal Circuit compared the claims in *PersonalWeb* to a librarian locating books on a "call system" wherein books are assigned unique identifiers based on call numbers." *Id.* at 1316. Because the patent amounted to computerization of this human activity, the Federal Circuit determined that it was abstract. *See id.*; *see also Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019) ("This is a quintessential 'do it on a computer' patent: it acknowledges that data from bedside machines was previously

collected, analyzed, manipulated, and displayed manually, and it simply proposes doing so with a computer. We have held such claims are directed to abstract ideas.").

Like the claims in *PersonalWeb*, the asserted claim of the '876 patent is a method of automating previously manual human activity—that is, the updating of software on a form of media. The patent acknowledges that the method it claims was previously carried out manually: "In the case of re-writeable media (e.g., floppy disks, CD-RW, key-chain RAM, etc.), the update process is possible. The end user would return the re-writeable media to the content provider and the content provider would over-write the old information with new information." Compl., Ex. 1, at 1:39–43. Furthermore, as anyone who has worked in a corporate or office environment is aware, re-writeable media has long been updated "manually" by, for example, members of a corporation's IT department obtaining the relevant updates from the software manufacturer (which may be different depending on the employee, job title, and/or department) and then deploying those updates either in person (by going to each individual employee's office) or over the corporate network (via installation scripts managed by the IT department). Nor does the '876 patent describe technology other than generic, preexisting computer components on which the patented process is implemented. *See, e.g.*, Compl., Ex. 1, at 3:28–29 (describing generic means of reading media, "such as a serial or parallel connection, a USB connection, a floppy disk drive, a CD drive, a DVD drive, and the like"), 3:62–65 (describing the keying application connecting to the interned using "e.g., wired, wireless local area networks, wireless wide area networks, etc."), 6:32–34 (the "Content Server is a computer system or other information processing device that is available to the user through Network connection"), 6:48–55 (describing the Content Database as "any program that stores and qeuries [sic] data accessible by applications running on Content Server" such as "Oracle, MySQL, SQL Server"). The "Keying Application" discussed repeatedly in the

specification is nothing more than a nonce term used as a stand-in for generic and unspecific computer functionality. *See id.* at 3:37–46 ("Launching the Keying Application starts a self-contained, user interface. This user interface is specific to the device upon which the media is accessed/read. For example, in the case of running the media on a personal computer system, the user interface may be a network browser or browser-like application, which eliminates the need for use of any other external programs (i.e., external to the Keying Application) to access the content. As additional examples, the Keying Application might be a text-based, prompt-and-respond user interface, or a GUI with user initiated hyperlinks.").

Where a claim merely automates or speeds up processes previously carried out manually, "the mere automation of this process does not negate its abstraction." *Data Engine Techs.*, 906 F.3d at 1013. Rather, where "the claims focus on 'mere automation of manual processes using generic computers[,]' [t]hat fails step one." *PersonalWeb*, 8 F.4th at 1318 (citing *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017)). Because the asserted claim of the '876 patent amounts to no more than the automation of human activity, it is directed to an abstract idea.

### 3. Claim 9 is Purely Functional, Rather than Reciting How the Claimed Function is Achieved, an Indication of Abstraction.

Also relevant to determining whether a particular claim is directed to an abstract idea is "whether the claim is purely functional in nature, rather than reciting how the claimed function is achieved." *First-Class Monitoring, LLC*, 389 F. Supp. 3d at 464. For instance, the Federal Circuit has considered whether a particular claim had "the specificity required to transform [it] from one claiming only a result to one claiming a way of achieving it." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). To answer that question, the Federal Circuit has directed courts to "look to whether the claims focus on a specific means or method, or are instead directed

to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017).

Other cases from the Federal Circuit have employed this analysis and applied it to hold claims ineligible under Section 101. *See, e.g.*, *Clarilogic, Inc. v. FormFree Holdings Corp.*, 681 F. App'x 950, 954 (Fed. Cir. 2017) ("[A] method for collection, analysis, and generation of information reports, where the claims are not limited to how the collected information is analyzed or reformed, is the height of abstraction."); *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017) ("Indeed, the claim language here provides only a result-oriented solution, with insufficient detail for how a computer accomplishes it. Our law demands more."); *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016) ("The patents claim systems including menus with particular features. They do not claim a particular way of programming or designing the software to create menus that have these features, but instead merely claim the resulting systems.").

Like the claims held invalid by the Federal Circuit in these cases, the asserted claim of the '876 patent claims the result of the patented method, without providing a way of achieving that result. Neither the claims nor the specification describe, for example, **how** updates are to be delivered to the media, specify a new or improved method of downloading information updates, describe a novel way to connect media to a network, or call for a new means of selecting or retrieving said information. Rather, the claims broadly preclude using unique identifiers, connecting to an information database, and downloading information updates using generic and existing computer processes and machinery. *See supra*, at 12–13.

The Court should find that the claims of the '876 patent fail the *Alice* test at Step One because they are directed to the abstract idea of providing updated media content based on user characteristics.

### C.  *Alice* Step Two: The Asserted Claim Does Not Contain an Inventive Concept

In the Alice Step Two analysis, courts examine whether the claimed "additional limitations" (i.e., those beyond the abstract idea itself) "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018).  When examining the issue of conventionality, courts must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements transform the nature of the claim into a patent eligible application." *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1304 (Fed. Cir. 2019).  Claims may recite an inventive concept when they include specialized hardware to accomplish the abstract idea, but "***contain no inventive concept***" when they recite implementing an abstract idea using generic and/or conventional computer components and functions. *Intellectual Ventures I, LLC v. Capital One Bank (USA), N.A.*, 792 F.3d 1363, 1368–70 (Fed. Cir. 2015) (emphasis added); *see also Univ. of Fla. Rsch. Found.*, 916 F.3d at 1369 (claims failed *Alice* Step Two because they were not "a technical improvement over prior art" and instead merely "recite[d] the abstract idea of 'collecting, analyzing, manipulating, and displaying data,' and propose[d] using 'a general-purpose computer to carry it out'").

Here, claim 9 of the '876 patent does not include any specialized hardware or new techniques for data analysis, retrieval, or transmission.  Rather, as explained above and as confirmed by the specification, the claim relies exclusively on generic and/or conventional computer components and functions. *See supra*, at 12–13.  A claim fails *Alice* Step Two where its "recitation of a computer amounts to a mere instruction to implement an abstract idea on a

- 15 -

computer." *Bluebonnet Internet Media Servs., LLC v. Pandora Media, LLC*, No. 2022-2215, 2024 WL 1338940, at *1 (Fed. Cir. Mar. 29, 2024).  Similarly, a patent is not saved at *Alice* Step Two where it recites a supposedly "specialized" computer device without providing support for how and why the device is specialized.. *See Chewy, Inc.*, 94 F.4th at 1367 ("While IBM argues the claimed repository is specialized, this is not supported by the '443 patent.  Instead, the patent broadly refers to an 'information repository' with no further details."); *see also Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017) ("The mere fact that the inventor applied coined labels to conventional structures does not make the underlying concept inventive.").

Here, the claim recites only generic computer components (an "electronic device" and a "content server"); the claimed "keying application" is not a device, but a piece of software for which neither the claim nor specification provides meaningful implementation details (or indeed, much detail at all).  The only feature of the "keying application" software recited in claim 9 is associating a media identifier with a user ID ("the media identifier is associated with the user ID using a keying application") and no description is given of how that association (something that can easily be done in the human mind and/or with pen and paper) is actually performed.  The only technical detail the specification offers regarding the keying application is that can employ different user interfaces (e.g., "network browser or browser-like application" or "a text-based, prompt-and-respond user interface, or a GUI with user initiated hyperlinks") and that it will display the user interface that is "specific to the device on which the media is accessed/read."  But having the ability to use different interfaces on different devices does not make software specialized, and in any event, this aspect of the "keying application" is not claimed, as no reference to the user interface is made in claim 9.  *See Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, 838 F.3d 1266,

- 16 -

1271–72 (Fed. Cir. 2016) (the "'customized user interface' limitation in the claim d[id] not constitute a concrete application of the abstract idea . . . and thus d[id] not embody an 'inventive concept.'"). "[T]aken individually or in combination," claim 9 "neither improve[s] the functions of the computer itself, nor provide[s] specific programming, tailored software, or meaningful guidance for implementing the abstract concept." *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1380 (Fed. Cir. 2022) (citing *Intellectual Ventures I*, 850 F.3d at 1342).

Further, nothing in the Complaint identifies that the '876 patent contains "something more" than the performance of well-understood, routine, and conventional activity such that it would be saved at Alice Step Two—in fact, the Complaint does not address eligibility at all. Because the '876 patent does not does not describe something "significantly more" than the abstract idea to which it is directed, it cannot constitute an "inventive concept." *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1379 (Fed. Cir. 2024) ("To survive at Alice step two, a claim must recite something "significantly more" than an abstract idea itself."). The '876 patent therefore fails at *Alice* Step Two.

Having failed the *Alice* analysis at both steps, the '876 patent is ineligible under 35 U.S.C. § 101, and the Court should dismiss the Complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

## IV.   CONCLUSION

For the foregoing reasons, Microsoft respectfully requests that the Court grant its motion and dismiss Media Key's claims for failure to state a claim under Rule 12(b)(6) with prejudice.

Dated: July 29, 2024                                    Respectfully submitted,

*/s/ John W. McBride*
John W. McBride
**NORTON ROSE FULBRIGHT US LLP**
1045 W. Fulton Market, Ste. 1200
Chicago, Illinois
Tel. (312) 964-7744
john.mcbride@nortonrosefulbright.com

Stephanie DeBrow
Gabriel Culver
**NORTON ROSE FULBRIGHT US LLP**
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701-4255
Tel. (512) 536-3094
Fax (512) 536-4598
stephanie.debrow@nortonrosefulbright.com
gabriel.culver@nortonrosefulbright.com

**Attorneys for Microsoft Corp.**

- 19 -

**CERTIFICATE OF SERVICE**

    I hereby certify that I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system for the Western District of Texas and that ECF system will send a Notice of Electronic Filing to the CM/ECF participants in this case on the 29th day of July, 2024.

                                                      */s/ John W. McBride*
                                                      John McBride
                                                      Attorney for Defendant